Filed 4/26/21  In re J.A. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re J.A. et al., Persons Coming Under the Juvenile Court Law. | |
| KINGS COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.A.,<br><br>Defendant and Appellant. | F081926<br><br>(Super. Ct. Nos. 19JD0063, 19JD0064)<br><br>**OPINION** |

**THE COURT**\*

APPEAL from an order of the Superior Court of Kings County.  Jennifer Lee Giuliani, Judge.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Lee Burdick, County Counsel, and Risé A. Donlon, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Poochigian, Acting P.J., Meehan, J. and DeSantos, J.

C.A. (mother) appeals the juvenile court's order terminating her parental rights as to her children, then 12-year-old J.A. and then two-year-old A.A. (Welf. & Inst. Code, § 366.26).[1] Mother contends the Kings County Human Services Agency (agency) failed to comply with inquiry provisions of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) The agency concedes there were inadvertent omissions in the ICWA inquiry and notice that it intends to remedy and does not oppose remand for the limited purpose of ensuring proper compliance with ICWA. We agree with the parties and conditionally reverse the juvenile court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

## FACTS AND PROCEDURAL BACKGROUND

Because the sole issue on appeal concerns compliance with ICWA, we only briefly discuss the underlying circumstances of the dependency proceedings.

In March 2019, then 13-year-old Daniel A., Jr.,[2] then 10-year-old J.A., and then 11-month-old A.A. were removed from mother's home because she had excessively physically disciplined Daniel and J.A., causing injuries. J.A. and A.A. were placed in a Resource Family Approval home.

The agency filed a juvenile dependency petition on behalf of the children alleging Daniel and J.A. came within the juvenile court's jurisdiction under section 300, subdivision (a) (serious physical harm), A.A. came within the court's jurisdiction under section 300, subdivision (j) (abuse of siblings), and all three children came within the court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect) and (g) (no provision for support) because both parents were in custody.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] This appeal only relates to J.A. and A.A.

2.

On March 22, 2019, mother executed a Parental Notification of Indian Status (ICWA-020) form indicating she was "or may be a member of, or eligible for membership in" a Cherokee or Apache tribe.

At the detention hearing held on March 22, 2019, mother indicated in open court that she had Native American ancestry through Apache and Cherokee tribes on her mother's side. Mother indicated she had just started the process to determine if she was eligible for membership with any tribe. Her grandfather, who was deceased, had Native American ancestry but was not an "active" member of the tribe. Mother indicated her great-grandmother could provide more information as she was still alive and lived in Hanford. The juvenile court made a finding ICWA may apply to the proceedings. D.A., Sr. (father), who was not present but was represented by counsel, was named an alleged father. The children were ordered detained from the parents pending the jurisdiction/disposition hearing.

On April 29, 2019, a combined jurisdiction/disposition hearing was held. Mother was present, but father did not call in for his court call. Both parents submitted the matter on the reports. The court sustained the allegations in the petition with the exception of the section 300, subdivision (g) allegation pertaining to mother because mother was out of custody. The court assumed jurisdiction over the children and ordered they be removed from the parents' custody. The court ordered mother be provided with reunification services. Father remained an alleged father.

On June 14, 2019, the agency filed a report requesting the court find ICWA did not apply. The report indicated it had sent information regarding the children to the Bureau of Indian Affairs (BIA), the Department of the Interior, and a number of Cherokee and Apache tribes and that 60 days had passed since that communication was made. Only three tribes responded and indicated the children were not enrolled members of the tribes.

3.

The Notice of Child Custody Proceeding for Indian Child (ICWA-030) form provided to the BIA, the Department of the Interior, and the tribes included mother's name, address, birth date, and place of birth. Under "additional information" it was stated "[Mother] claimed American Indian Heritage with the Cherokee & Apache Tribes through her maternal side of family and stated no family is enrolled members [sic]. Limited family lineage information provided." The name and birthday (not the year) of mother's mother (maternal grandmother) was provided. The names of mother's father (maternal grandfather) and grandmother (maternal great-grandmother) were provided. No other familial or tribal information was provided. Father's name, address, and date of birth were provided, and under "additional information" it was stated "Per the mother, … the father … does not have American Indian Heritage. Inquiries regarding American Indian Heritage will be made upon contact with [father]. Paternal family lineage information is not available."

At a special interim review hearing held on July 1, 2019, the court found ICWA did not apply. Father's attorney was present, but father was not personally present.

At the 12-month status review hearing held on May 27, 2020, mother's reunification services were terminated, and a section 366.26 hearing was set. Father appeared by phone, marking his first appearance in the proceedings. ICWA was not discussed.

The parents requested a contested section 366.26 hearing. At the trial confirmation hearing on October 8, 2020, the court discovered that the file did not contain an ICWA-020 form for father and ordered father to complete one. That day, father executed an ICWA-020 form on which he indicated the children may be members of or eligible for membership in an Apache or Cherokee tribe.

On October 12, 2020, a social service practitioner contacted the children's paternal grandmother. The paternal grandmother denied Native American ancestry on her side of

4.

the family and stated that the paternal grandfather, who was deceased, did not have any Native American ancestry to her knowledge. Paternal grandmother, however, advised father's paternal aunt (paternal great-aunt) may have more information. The social service practitioner contacted the paternal great-aunt, who advised that her father was Native American. She did not know what tribe but knew it was a tribe out of New Mexico. Paternal great-aunt did not have any information indicating any of her relatives were enrolled members or eligible for membership of any tribe.

At the contested section 366.26 hearing held on October 14, 2020, the court elevated father to presumed status. County counsel asked father on the record what information his indication on the ICWA-020 form that the children have Apache and Cherokee ancestry was based on, and father responded he wrote those tribes on the form based on mother's ancestry. Father stated he did not believe he had any Native American ancestry. He went on to say his father had talked about it, but father had no records. County counsel asked him if it was just "family history" or "family lore," and father responded in the affirmative. County counsel then requested to conduct inquiry of mother to determine whether she had any new information pertinent to ICWA. Mother indicated her brother (maternal uncle) was in the process of determining whether he was eligible to be enrolled in a tribe in Arizona. She would not give his information to the social worker, however, without his permission, and she was having trouble getting a hold of him. The court made a finding ICWA did not apply.

Following hearing the evidence, the court terminated parental rights and ordered adoption as the permanent plan for J.A. and A.A.

## DISCUSSION

Mother contends the court's finding ICWA did not apply was not supported by sufficient evidence because the agency did not conduct an adequate inquiry of the

parents, extended family members, or the BIA.  Respondent concedes error and does not oppose remand.  We accept respondent's concession.

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.)  In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child,"[3] the Indian custodian and the Indian child's tribe have the right to intervene (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)).  The court and county child welfare agency "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 9; Cal. Rules of Court, rule 5.481(a).)

When the court or social worker has "reason to believe"[4] (but not sufficient evidence to determine there is "reason to know"[5]) that an Indian child is involved in a

---

[3]     For purposes of ICWA, an "Indian child" is an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

[4]     "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.  Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)."  (§ 224.2, subd. (e)(1).)

[5]     There is "reason to know" a child is an Indian child if "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family

proceeding, section 224.2, subdivision (e) requires "further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).) "[F]urther inquiry" includes: (1) interviewing the parents and extended family members to gather available familial and tribal enrollment information; (2) contacting the BIA and State Department of Social Services for assistance with identifying tribes in which the child may be a member of or eligible for membership; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subd. (e)(2); 224.3, subd. (a)(5).) The agency "has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.)

While interviewing parents and extended family members, the agency is to gather the following information:

> "(A) The name, birth date, and birthplace of the Indian child, if known[;]
>
> "(B) The name of the Indian tribe in which the child is a member, or may be eligible for membership, if known[; and]
>
> "(C) All names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment

informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [¶] [and/or] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian Tribe." (§ 224.2, subd. (d); see 25 C.F.R. § 23.107(c) (2020).)

information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5); see § 224.2, subd. (e)(2)(A).)

"Contact with a tribe" for the purpose of the agency's duty of further inquiry "shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).)

If, after further inquiry is conducted, "the court, a social worker, or probation officer knows or has reason to know … that an Indian child is involved" in the dependency proceeding, notice shall be sent to the child's parents or legal guardian, Indian custodian, if any, and the child's tribe for any hearing that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement so the tribe may exercise its right to intervene. (§ 224.3, subd. (a); see 25 U.S.C. § 1912(a).)

We review the juvenile court's finding that ICWA is inapplicable for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.) We apply the ICWA statutes that applied at the time of the finding from which mother appeals. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

Here, the juvenile court's finding on October 14, 2020, that ICWA was inapplicable was not supported by substantial evidence because the agency did not conduct an adequate inquiry. As to mother, her disclosures gave the agency and the court "reason to believe" the children were Indian children, triggering the duty of further inquiry. From this record, it appears the agency only interviewed mother and provided sparse and incomplete information to the relevant tribes and the BIA. The agency should have attempted to interview mother's great-grandmother and to locate other family members who could help provide as much of the information required under

section 224.3, subdivision (a)(5), so the relevant tribes could make an informed determination about the Indian status of the children.

Similarly, father and paternal great-aunt's indication that they may have ancestry through a tribe in New Mexico triggered the agency's duty of further inquiry. The agency was required to attempt to gather the pertinent information from father and extended family members and depending on the outcome of that investigation, share the information with relevant tribes and/or the BIA so a determination could be made as to whether the children were Indian children.

Because the agency's further inquiry on both mother and father's sides of the family was inadequate, the juvenile court's order ICWA did not apply was not supported by substantial evidence and conditional remand is necessary.

## DISPOSITION

The juvenile court's October 14, 2020 order terminating mother and father's parental rights is conditionally reversed. The matter is remanded to the juvenile court for the agency to conduct adequate inquiry required by sections 224.2 and 224.3, and for any further proceedings resulting therefrom. If, after the court finds adequate inquiry has been made, the court finds ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court finds ICWA does not apply, the section 366.26 order shall remain in effect.